## Case No. 3,170.

### In re COOKE et al.

[12 N. B. R. 30; 1 Wkly. Notes Cas. 318.][1]

District Court, E. D. Pennsylvania. March 23, 1875.

PROOF OF DEBT IN BANKRUPTCY—PARTNERSHIP.

1. One member of a copartnership of banking firms termed a "syndicate," having in its possession certain moneys belonging to the syndicate as the result of transactions on its account, became bankrupt.

2. Upon a statement of the accounts of the syndicate, it was ascertained, as alleged, that, including the said moneys as portion of the common fund for division among the respective constituents of the syndicate, there was due to the bankrupt firm a certain sum less in amount than the said moneys. Another member of the syndicate upon behalf of itself and its associates, sought to prove a claim against the bankrupt's estate for the whole of said moneys in the possession of the bankrupt firm, at the time of its failure, claiming dividends, however, on the same only until they should amount to the difference between the said sum and the portion of the profits to which the bankrupt firm appeared to be entitled, upon the statement of the account of all the profits of the syndicate, including the said moneys first mentioned.

3. Upon objection by the trustee of bankrupt's estate, it was *held* that the proof could not be allowed for more than the difference between the bankrupt's share of the profits, and the amount claimed to be due by them at the time of the failure; and that an absolute allowance of proof for this amount, could not be sanctioned independently of any question of equalization or adjustment that might arise upon examining the final account of every one of the several firms of which the so-called syndicate was composed, with such syndicate, and comparing those several accounts with one another, and with the final account of the bankrupts.

[Cited in Re May, Case No. 9,328.]

4. Semble, that a partnership cannot prove against the estate of one of its members, except for a debt arising by fraud, as distinguished from contract.

[Certificate of Joseph Mason, Register in Bankruptcy:]

To the Honorable John Cadwalader, Judge of the Said Court: I, the undersigned register in bankruptcy, to whom the above matter was referred, respectfully report:

That, on the 17th day of March, 1874, on behalf of Jay Cooke, McCulloch & Co., and certain other banking houses composing a copartnership or association, known by the name of "syndicate," a deposition was made for the proof of a claim against the estate of the said bankrupts, amounting to the sum of two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents gold. That on the 15th day of September, 1874, a deposition in amendment of the proof of said claim was made and filed. On September 18th, following, the trustee of the said bankrupt's estate presented a petition for the re-examination of said claim as amended. On September

[1] [Reprinted from 12 N. B. R. 30, by permission. 1 Wkly. Notes Cas. 318, contains only a partial report.]

22d, 1874, 11 a. m., Richard C. McMurtrie, Esq., appeared for the said claimants, and Richard L. Ashhurst and John C. Bullitt, Esqs., for the trustee. The objections set forth in the petition of the trustee were duly argued. The said depositions and petition are herewith forwarded. The business of the said partnership or association was the negotiation of certain bonds of the United States. The agreement of the said banking houses with the secretary of the treasury of the United States is annexed to the second deposition. It is alleged in said deposition, that it was the duty of each party to the agreement to pay into the hands of Messrs. Rothschild of London, one of the parties thereto, any money received in the business. That the business had at the time of the failure of the bankrupts been completed, and nothing remained but to settle the accounts of the parties concerned. That in the course of the business, Jay Cooke & Co. had in their possession, as the result of transactions for account of the syndicate, the sum of two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents, gold. That there was in the hands of the syndicate a fund which were the profits of the concern, independent of the amount due from Jay Cooke & Co. That that sum was divided, and the amount that Jay Cooke & Co., and Jay Cooke, McCulloch & Co., would have been entitled to receive, had there been nothing due from Jay Cooke & Co., would have been each twenty-two thousand six hundred and twenty-three pounds, five shillings, eleven pence, or one hundred and eight thousand two hundred and twenty-two dollars and thirty-seven cents, gold. That the united shares of the profits of these two houses is less by seven thousand four hundred and thirty-eight pounds, nineteen shillings and two pence, than the amount due the syndicate from Jay Cooke & Co. That this division was made among the respective houses composing the syndicate, exclusive of Jay Cooke & Co., and Jay Cooke, McCulloch & Co., the latter assenting thereto, without, however, agreeing that it could be done lawfully. That there was no connection between Jay Cooke & Co., and Jay Cooke, McCulloch & Co., other than that between any other two parties to the syndicate contract. That on account of many of the partners in the one firm being also partners in the other, it was provided in the articles of copartnership of Jay Cooke, McCulloch & Co. that the profits of all business, which in its inception or completion should require the agency of both houses, should be equally divided between them, but that there was no agency assumed by either house for the other, in respect to the syndicate transactions. That of the sum of two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents, gold, received by Jay Cooke & Co., as alleged, in order to pay the parties other than Jay Cooke & Co., and Jay

Cooke, McCulloch & Co., their full share of the profits, seven thousand four hundred and thirty-eight pounds, nineteen shillings and two pence is required, and to pay Jay Cooke, McCulloch & Co. for its full share, twenty-two thousand six hundred and twenty-three pounds, five shillings and eleven pence, leaving with Jay Cooke & Co., also, the sum of twenty-two thousand six hundred and twenty-three pounds, five shillings, and eleven pence, or one hundred and nine thousand two hundred and twenty-two dollars and thirty-seven cents, gold.

The claimants contend that they should be allowed to prove for the sum of two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents, gold, and receive dividends thereon, until they shall have received the sum of one hundred and forty-six thousand two hundred and seventy-six dollars and sixteen cents, gold. To this the trustee has objected, and has replied that, had the syndicate made no such application of the profits, in payment of the claim, the share of profits due said bankrupts would have been applicable as a set-off to the said claim, and since they have expressly made such an application, the claimants cannot contend, that it is anything else than a payment of the claim, pro tanto, and therefore, a reduction of the claim to that extent; so that the total amount which Jay Cooke, McCulloch & Co., or the syndicate, can claim is one hundred and forty-six thousand two hundred and seventy-six dollars and fifteen cents, gold. I can find no precedent or authority for the claim being made as set forth in the depositions by the syndicate, as a partnership, composed of the several banking houses, including that of Jay Cooke & Co., against the estate of Jay Cooke & Co., in bankruptcy. In the Case of Buckhause [Case No. 2,086], a firm of which only one of the bankrupts was a member, was allowed by its solvent partner to prove a debt against the bankrupts, contracted by them as a partnership with the other. Lowell, J., says, "I have often decided that equitable debts may be proved under our bankrupt act, and I am not aware that a contrary decision has ever been made. Holding this to be a debt in equity and finding the decisions in bankruptcy in favor of allowing its proof, I admit it, though without any intimation that as between one partner or any number of partners and the others, where there is no firm with a foreign member, the Massachusetts cases" (which appear not to permit such a proof) "may not express the true doctrine for this country." But this is not the present case, and the difference is expressly stated in the case just cited, as follows, "It cannot be denied that, in substance, a debt due from A and B to A and D is a very different thing from a mere overdraft by A from the funds of A and B. To refuse to notice the distinction, is to disregard the credit of D altogether." The cases

of Ex parte Harris, 2 Ves. & B. 209, and Ex parte Yonge, 3 Ves. & B. 31, seem to decide that a partnership or the assignee of the partnership, cannot prove against the estate of one of its members, except for a debt arising by fraud as distinguished from contract, as by an act against the expressed or implied contract, and without the expressed or implied authority of the copartner, as by an overdraft to increase the separate estate, or under circumstances implying fraud as for private purposes, without the knowledge, consent, privity or subsequent approbation of the other, inferred from his giving the whole control to his partner, but such form of proof seems to have been restricted to the case of a joint commission; for in Ex parte Yonge the proof appears to have been made by the solvent partners and not on behalf of themselves and the bankrupt. The question is perhaps one of form rather than substance, and is not important excepting in so far as error in form may tend to obscure a correct view of the substance. In Ex parte Yonge, Lord Eldon states the case thus: "In bankruptcy there is both a legal and equitable jurisdiction, and previously to the bankruptcy the Botfields (the two solvent partners) might have filed a bill to compel Slaney (the bankrupt partner), to repay that money so fraudulently abstracted; that right can never be taken away from them by the bankruptcy of Slaney, and the fact that his separate creditors have a right to his separate estate, although in law the two solvent partners cannot strictly be creditors of Slaney; and although if all were solvent, the three could not maintain an action against one of them, yet, in equity, upon such a transaction the money so abstracted by that one is the debt of the two, to be applied by them as trustees for the three; and the bankruptcy would not alter that."

The depositions offered by the claimants do not set out any such case of fraud, and, therefore, the doctrine illustrated in the cases just cited affords them no assistance. The moneys for which the claim is made are admitted to have come into the hands of the bankrupts in the course of the business. The counsel for the claimants has, however, ingeniously argued that, until the bankrupts have paid to the syndicate the moneys received on account of its transactions, they cannot, nor can their creditors, receive any portion of the profits. That to allow the claimants to prove only for the difference between the profits as estimated upon the supposition of payment, and the amount actually received by the bankrupts, would be to allow the other creditors of the bankrupts to have all the benefit of the partnership with the claimants without having complied with its stipulations. It is further contended that, until the bankrupts have paid into the common fund the moneys received by them, there are no profits, or at least none to which the bankrupts can be entitled. But that, I think, is begging the question; for the receipt by one partner is the receipt of all, and, if the aggregate receipts, no matter whether in the hands of two or one only of the firm, are greater than the expenses, and the capital contributed, there must be a resulting profit to the firm. That the one or the two, as the case may be, have the shares of the others as well as his or their own, does not affect the existence of that in which they, as well as he or they, are jointly interested. Upon the first consideration of the question I was inclined to favor the view of the claimants, and was influenced partly by the following course of reasoning: The measure of the claims against a bankrupt's estate must be in proportion to the contribution made thereto by the respective claimants. The estate may be regarded as a fund whose component parts consist of such contributions, which have become respectively proportionally diminished. That equality of distribution requires the preservation of the same relation of parts in the analysis as in the synthesis. That applying this to the present case the syndicate must be considered as having contributed the sum claimed, and are, therefore, entitled to its proportionate share of the whole estate. That the interest of the bankrupts, whatever it may be, in the syndicate property, was a matter of separate estimation, and to be rendered available only on the same conditions as would have been necessarily imposed on the bankrupts themselves had there been no bankruptcy. But such a statement of the case I found to be erroneous in its postulate—that the syndicate had contributed to the bankrupt's estate the sum named. Upon reflection I became satisfied that such was not its contribution. For the portion of said sum to which the bankrupts are admitted to be entitled, provided the whole amount be paid by them, is the exact measure of the contribution by the bankrupts in the first place to the syndicate. The difference, therefore, is all that in point of fact has been contributed by the syndicate, and the amount by which the bankrupt's estate has been augmented. The 21st section of the bankrupt act [of 1867 (14 Stat. 526)] provides as follows: "No creditor, whose debt is provable under this act, shall be allowed to prosecute to final judgment any suit at law or in equity, therefor, against the bankrupt," "provided" "that, if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy." What could the claimants, upon the facts as stated, recover at law? For, in the present condition of the partnership accounts, it would not seem to be necessary to resort to a court of equity. Simply the balance due—no more. See Add. Cont. 733-735, and the cases there cited. Suppose the estate of the bankrupts should pay no dividend, and they are

not discharged, the claim, as at present made, could not be sustained in a suit against them; judgment would be entered only in such amount as, if paid by them, would give the claimants their share of the moneys received.

If a solvent partner pay all the partnership debts, his proof against the separate estate of his bankrupt partners cannot include the portion of the said debts which, upon a settlement of the accounts, would be properly payable by him. See Ex parte Watson, Buck, 449; Ex parte Smith, Id. 492; Ex parte Plowden, 3 Mont. & A. 402; Ex parte Moore, 2 Gill & J. 166. For, although the last case establishes a different rule as to the amount for which partners may prove as against the estates of their copartners than that laid down in the first two cases, yet in none do I apprehend is the partner proving allowed to include his own share of the indebtedness paid in the proof against the others or any one of them. Now the bankrupt partner, although liable to the joint creditors for the whole debt, is entitled to the benefit of the payment by his solvent partner to the amount of said solvent partner's liability, and by the decisions referred to he obtains it by deducting from the claim of the creditor the proportionate share of the liability of his solvent copartners, and the claim by the latter against him cannot be for more than the balance. Now the bankrupt's share in the profits of the firm is a benefit of the same nature, and arises from the contract of copartnership in the same manner, and in any claim against him by his copartners arising out of partnership transactions can be made available to him in the same way, to wit, by a reduction of that claim. In other words, if there is a joint loss and one bears it all, his claim can only be for that part which he should not have borne; and, e converso, if there is a joint profit and one receives it all, the claim of those who have received nothing can only be for what they should have received. Accordingly, in Ex parte Tyrrel, Buck, 345, it was held that if, on the bankruptcy of one or several partners, the joint creditors are paid in full out of the joint estate, but upon taking the partnership accounts a balance appears to be due to the solvent partners, the surplus of the joint estate will be paid to the solvent partners in part payment of the balance due to them, with liberty to prove against the separate estate for the difference.

The counsel for the claimants has cited the case of Ex parte Graham, 3 Ves. & B. 130, where it was held that the banker appointed under a commission of bankruptcy becoming bankrupt, his estate is not entitled to any dividend on a debt proved by him against the other, until full reimbursement of all property of that estate beyond the amount of his dividend, as analogous to the present question. This was held in Ex parte Bebb, 19 Ves. 222; Ex parte Bignold, 2 Mad. 470,— and necessarily results from the principle that the assignees of a bankrupt are subject to all the same equities affecting the bankrupt's rights which could have been enforced against the bankrupt himself. See Grant v. Mills, 2 Ves. & B. 306; Ex parte Hartop, 12 Ves. 349; Mitford v. Mitford, 9 Ves. 87. The debt due by a creditor of a bankrupt to the assignee, and the debt from the bankrupt to such creditor, cannot be said to be mutual— they are contracted en autre droit. In Ex parte Graham, the banker to the commission, had he remained solvent, could not have set off his claim against the bankrupt in an action to recover the moneys deposited with him; and the rights of his creditors could be none other than his own. The claims of partners against each other are clearly the subject of mutual debt and credit, and bear no resemblance to the relations existing between a creditor of a bankrupt and one of their number to whom has been entrusted the moneys of the estate. I therefore reported that the claim of Jay Cooke, McCulloch & Co. and others, styled "syndicate," should be reduced as claimed by the trustee to the sum of one hundred and forty-six thousand two hundred and seventy-one dollars and twenty-one cents, gold, being two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents (which, by reference to the account annexed to the first deposition, I think must be the correct amount, and not two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-three cents, which is probably a clerical mistake of transposition of figures) less one hundred and nine thousand two hundred and twenty-two dollars and thirty-seven cents, estimated share of profits of Jay Cooke & Co.

CADWALADER, District Judge. The question is whether one hundred and nine thousand two hundred and twenty-two dollars and thirty-seven cents, the bankrupt's share of the profits of the joint concern, is to be deducted from the claim of two hundred and fifty-five thousand four hundred and ninety-three dollars and fifty-eight cents, before proof is allowed. The question answers itself. The proof cannot be allowed for more than the difference, one hundred and forty-six thousand two hundred and seventy-one dollars and twenty-one cents.

BY THE COURT. The register is instructed that the court's order of yesterday does sanction an absolute allowance of proof of the amount of one hundred and forty-six thousand two hundred and seventy-one dollars and twenty-one cents, independently of any question of equalization or adjustment that may arise upon examining the final account of every one of the several firms, of which the so-called syndicate was composed, with such syndicate, and comparing those several accounts with one another, and with the final account of the bankrupts.